WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

ANNETTE J. NGANJE, an individual, )
)
                     Plaintiff, )
)
    vs. )
)
CVS Rx SERVICES, INC., )
)   No. 2:13-cv-2327-HRH
                 Defendant. )
_____)

O R D E R

Motion to Dismiss

Defendant moves to dismiss plaintiff's complaint.[1] This motion is opposed.[2] Oral argument was requested but is not deemed necessary.

Background

Plaintiff is Annette J. Nganje. Plaintiff is black, African in race, and originally from Cameroon, West Africa.[3] Plaintiff began working for defendant CVS Rx Services, Inc. as a

---

[1]Docket No. 8.

[2]Docket No. 15.

[3]Original Complaint at 3, ¶ 10, Docket No. 1.

pharmacist in June 2005 in Minnesota.[4] In 2007, plaintiff moved to Arizona, where she continued to work for defendant.[5] Plaintiff worked at defendant's Store 01719 in Queen Creek, Arizona.[6] Plaintiff "was the only black pharmacist in the CVS district in which she worked."[7] Jennifer Richmond was plaintiff's Pharmacy Manager; John Cerni was her District Manager; and Don Mott was her Store Manager.[8]

Plaintiff alleges that "Cerni has treated her with hostility not shown to non-black, non-African employees."[9] Plaintiff alleges that Cerni "mishandled [her] immigration paperwork ... which ... required [her] to take a forced leave of absence for several months...."[10] Plaintiff alleges that in January 2010, Cerni "wrote her up" "for alleged customer service issues based on complete hearsay – ignoring the many customer thank yous and emails communicated to CVS regarding" plaintiff.[11] Plaintiff alleges that Cerni

---

[4]Id. at 2, ¶ 4.

[5]Id. at ¶ 8.

[6]Id. at 3, ¶ 9.

[7]Id. at ¶ 11.

[8]Id. at ¶ 12.

[9]Id. at ¶ 13.

[10]Id. at ¶ 14.

[11]Id. at ¶ 16.

"interview[ed] other Store employees soliciting them for anything negative about [her] that he could use to write her up."[12]

Plaintiff alleges that Cerni "wrote [her] up again in October 2011 for 'staying too long at work' – a problem perpetuated by [defendant's] refusal to provide trained pharmacy technicians to the Store...."[13]  Plaintiff alleges that she was written up a third time by Cerni "in February 2012 for following CVS policy in dealing with a drug-seeking customer."[14] Plaintiff alleges that Cerni "was not present for the situation but simply assumed that [she] was in the wrong and the customer was in the right...."[15]  Plaintiff alleges that when she "confronted Cerni with the policy, [he] altered the write-up to be for something else, but left it in place."[16]

Plaintiff alleges that in 2010, Cerni "pulled rank to conduct [her] annual review (instead of her immediate supervisor handling it) ... and gave her a negative review."[17] Plaintiff alleges that Cerni "did not conduct the reviews of other employees at the Store."[18]

---

[12]Id. at ¶ 17.

[13]Id. at 4, ¶ 18.

[14]Id. at ¶ 20 (emphasis omitted).

[15]Id. at ¶ 21.

[16]Id. at ¶ 22.

[17]Id. at ¶ 23.

[18]Id. at ¶ 24.

Plaintiff alleges that in November 2012, Cerni and Richmond gave her a "coaching session" for poor performance and that Cerni required her to stay in the employee lounge after the coaching session, even though she was ill.[19] Plaintiff alleges that when she told Cerni she was ill, he "replied mockingly, 'I thought you were going to say that and you look fine to me.'"[20] Plaintiff alleges that she "asked to be allowed to go home, but Mr. Cerni informed her it would be 'job abandonment' if she left."[21] Plaintiff alleges that she "even asked Mr. Cerni to fire her so she could just leave" but he "said 'no, stay in the lounge until you are ready to return to work.'"[22] Plaintiff alleges that Cerni "would not even allow [her] to leave to go to the pharmacy to obtain her feminine products from her purse to deal with her monthly period."[23] Plaintiff alleges that when she "made this request, Mr. Cerni said, 'what makes you think I will let you do that?'"[24] Plaintiff alleges that after sitting in the employee lounge for one hour, she fainted and "[t]he front store supervisor found and awakened [her]."[25] Plaintiff alleges that she then "called 911 and the ambulance came and

---

[19] Id. at ¶ 25.

[20] Id. at ¶ 26.

[21] Id. at 5, ¶ 27.

[22] Id. at ¶ 29.

[23] Id. at ¶ 30.

[24] Id. at ¶ 31.

[25] Id. at ¶¶ 32-33.

took [her] to the hospital where she was diagnosed with dehydration, vomiting, and hypokalemia...."[26]

Plaintiff alleges that Cerni also "accused [her] in front of staff and customers for an alleged 'disarray' of medications - never bothering to inquire as to whether [she] was responsible for the problem – when in fact the practice of the Store made that the problem of the previous shift."[27] Plaintiff alleges that "Cerni's accusations, tone of voice, and actions were so hostile that [she] felt compelled to call the police in fear for her safety."[28]

Plaintiff alleges that when she "directed Mr. Cerni to performance problems regarding the inexperienced Pharmacist in Charge who was creating some of the issues for which Mr. Cerni was blaming [her], Mr. Cerni warned her (in Ms. Richmond's presence): 'watch what you say, I trained her" and refused to follow up on [plaintiff's] complaint."[29] Plaintiff also alleges that "Cerni did not pay [her] an end of year bonus in 2012 despite paying bonuses to the other Store employees."[30]

Plaintiff alleges that "when the pharmacy became extremely crowded, other (white) pharmacists were allowed, upon their request, to close the drive-through window at the

---

[26] Id. at ¶ 34.

[27] Id. at ¶ 35.

[28] Id. at ¶ 36.

[29] Id. at 5-6, ¶ 37.

[30] Id. at 6, ¶ 38.

Store to deal with the crowd inside. CVS management denied [her] request to close the drive-through every time she asked."[31] Plaintiff further alleges that on January 12, 2013, when she "arrived at the Store as a customer to fill her husband's prescription ... [a] white pharmacist was working that day, and the drive through window was closed...."[32]

On December 20, 2012, plaintiff filed a charge of discrimination with the EEOC. In the charge, plaintiff alleges that she was discriminated against based on race, color, gender, and national origin.[33] Plaintiff alleged that she had been

> subjected to harassment and hostile work environment by John Cerni. Examples include, but are not limited to, being intimidated and disrespected; being written up; he interfered with my annual evaluation; he refused to give me a pay raise for 2012; he threatened to fire me; held me in the breakroom against my will when I was ill and told me it would be considered job abandonment if I left when I was sick; etc. As a result of the hostile work environment, I was forced to call the police.[34]

Plaintiff alleges she was given a "negative 'coaching and counseling'" on January 22, 2013 by Richmond and Brad Dudley.[35] Plaintiff alleges that "[u]pon information and belief, [defendant] was aware of [her] charge of discrimination at the time Mr. Dudley and Ms.

---

[31]Id. at ¶ 39.

[32]Id. at ¶¶ 40-41.

[33]Charge of Discrimination at 1, Exhibit A, Original Complaint, Docket No. 1.

[34]Id.

[35]Original Complaint at 6, ¶ 43. Defendant contends that Dudley is a CVS Human Resources Business Partner.

Richmond gave her" the January 22, 2013 coaching and counseling[.][36]  Plaintiff alleges that she resigned from her employment with defendant on January 22, 2013 because "[w]ith the unresolved stress, accusations, unwarranted management pressure, and recent medical issues piling up ... she felt that she had no [other] choice...."[37]

On August 16, 2013, the EEOC issued a right to sue notice.[38]  On November 14, 2013, plaintiff commenced this action.  In plaintiff's first cause of action, she asserts Title VII hostile work environment and constructive discharge claims.  Plaintiff's second cause of action is a Title VII retaliation claim in which plaintiff alleges that "[d]efendant has retaliated against [her] by issuing her an unwarranted negative employment action in January 2013 after she complained of discrimination in the workplace...."[39]  Plaintiff's third cause of action is a § 1981 racial discrimination claim.  Plaintiff's fourth cause of action is entitled "equitable relief."[40]

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, defendant now moves to dismiss plaintiff's complaint with prejudice.

---

[36]Id. at ¶ 44.

[37]Id. at 7, ¶ 45.

[38]Exhibit B, Original Complaint, Docket No. 1.

[39]Original Complaint at 8, ¶ 60, Docket No. 1.

[40]Id. at 10.

Discussion

"Rule 12(b)(6) authorizes courts to dismiss a complaint for 'failure to state a claim upon which relief can be granted.'" In re Rigel Pharmaceuticals, Inc. Securities Litig., 697 F.3d 869, 875 (9th Cir. 2012) (quoting Fed. R. Civ. P. 12(b)(6)). "To avoid dismissal, the complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] plaintiff must 'allege sufficient factual matter ... to state a claim to relief that is plausible on its face.'" OSU Student Alliance v. Ray, 699 F.3d 1053, 1061 (9th Cir. 2012) (quoting Pinnacle Armor, Inc. v. United States, 648 F.3d 708, 721 (9th Cir. 2011)). In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Srvc., 671 F.3d 1138, 1142-43 (9th Cir. 2012).

Defendant first argues that plaintiff's constructive discharge and retaliation claims must be dismissed because plaintiff has failed to exhaust her administrative remedies as to these claims. "Title VII claimants generally establish federal court jurisdiction by first exhausting their EEOC administrative remedies." Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990). "'Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 111, 114 (2002). "'[I]ncidents of discrimination not

included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge.'" Sosa, 920 F.2d at 1456. (quoting Green v. Los Angeles County Superintendent of Schools, 883 F.2d 1472, 1475-76 (9th Cir. 1989)).  "If the judicial complaint presents a new theory of liability requiring a different factual basis, neither of which is present in the administrative charge, the new theory is not like or reasonably related to the previous charge because the agency could not have had adequate notice of it." Ng v. Potter, Case No. C09–192Z, 2009 WL 3836045, at *5 (W.D. Wash. Nov. 12, 2009).

Plaintiff's claims for constructive discharge and retaliation are based on the January 22, 2013 "coaching and counseling" she received from Richmond and Dudley. Her EEOC charge contained no allegations related to the January 22, 2013 event. In fact, her EEOC charge could not have contained such allegations as it was filed on December 20, 2012). The allegations relating to the January 22, 2013 coaching and counseling are also not reasonably related to the allegations in plaintiff's EEOC charge which pertained to a hostile work environment. Thus, it would appear that plaintiff has failed to exhaust her administrative remedies as to her constructive discharge and retaliation claims. See Ong v. Cleland, 642 F.2d 316, 320 (9th Cir. 1981) (court held that Ong had not exhausted her administrative remedies as to a constructive discharge claim because she had not amended her EEOC charge to include allegations relating to a constructive discharge and she "did not allege

administratively that her employer had engaged in a pattern or practice of discrimination against her"); Zhang v. Honeywell Int'l Inc., Case No. 06-1181-PHX–MHM, 2007 WL 2220490, at *3 (D. Ariz. Aug. 1, 2007) (court held that Zhang had failed to exhaust her administrative remedies as to her retaliation claim because her EEOC charge made no mention of retaliation and contained no description of any retaliatory conduct by the defendant). Because it appears that plaintiff has failed to exhaust her administrative remedies as to her constructive discharge and retaliation claims, these claims are dismissed.[41]

These claims are not, however, dismissed with prejudice because it is possible that plaintiff has exhausted her administrative remedies as to these claims. Although her complaint contains no such allegations, plaintiff contends that on January 23, 2013, she sent an email to the EEOC investigator assigned to her case advising that she had been forced to resign. If the EEOC were on notice that plaintiff was claiming she had been forced to resign and that defendant had retaliated against her, then plaintiff may have exhausted her administrative remedies. See Wiederhold v. Sears, Roebuck and Co., 888 F. Supp. 2d 1065, 1087-88 (D. Or. 2012) (court found that the plaintiff had exhausted her administrative remedies as to a constructive discharge claim, in part because she had advised the EEOC

---

[41]Because plaintiff's constructive discharge claim is dismissed on exhaustion grounds, the court need not consider defendant's argument that plaintiff has failed to allege sufficient facts to support her constructive discharge claim.

that she had resigned). Thus, plaintiff will be given leave to amend as to her constructive discharge and retaliation claims.

Defendant next argues that plaintiff's hostile work environment claim should be dismissed because it is not plausible. "At the motion to dismiss stage, [plaintiff] need not support h[er] allegations with evidence, but h[er] complaint must allege sufficient facts to state the elements of a hostile work environment claim." Johnson v. Riverside Healthcare System, LP, 534 F.3d 1116, 1122 (9th Cir. 2008). In order to state a prima facie hostile work environment claim, plaintiff must allege facts showing that "(1) the defendant[] subjected her to verbal or physical conduct based on her race[, color, or national origin]; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." Surrell v. Calif. Water Service Co., 518 F.3d 1097, 1108 (9th Cir. 2008).

Defendant argues that plaintiff has not alleged any verbal or physical discriminatory conduct that occurred because of her race, color, or national origin. Defendant contends that plaintiff's allegations of discriminatory conduct all relate to her performance and that such allegations are insufficient to state a hostile work environment claim. Defendant compares plaintiff's allegations to those of the plaintiff in Surrell. Surrell alleged

> that Cal Water and Cox subjected her to a hostile work environment based on comments Cox made to her from 1998 to 2002. On at least one occasion, Cox confronted Surrell in front of a customer about failing to perform an aspect of her job. Cox also

>accused Surrell, in front of a customer and co-worker, of failing to pay attention to her job and, in turn, causing the company to lose money. Surrell asserts that this accusation was based on paperwork that did not belong to her. Also, on more than one occasion, Cox told Surrell that she was too slow with her work.

Id. at 1108. The court found that Surrell had failed to make out a prima facie case for a hostile work environment claim because " she presents no evidence that Cox's comments were based on race. These comments were all performance related." Id. at 1108-09.

Defendant also relies on Amobi v. Arizona Board of Regents, Case No. 2:10–cv–01561 JWS, 2011 WL 308466 (D. Ariz. Jan 28, 2011). There, the plaintiff alleged that her supervisor "disparaged [her] work, reprimanded her without cause, and falsely accused her of cancelling a class and of publishing irregularities." Id. at *4. The court found the plaintiff's allegations of a hostile work environment were insufficient to state a plausible hostile work environment claim because they were not made based on the plaintiff's race, but rather related to her performance. Id.

Similarly here, defendant argues that plaintiff's allegations all have to do with job performance and there is nothing in her complaint to suggest that any of the conduct was motivated by her race, color, or national origin. Defendant acknowledges that plaintiff has alleged that she was not permitted to close the drive-through window to deal with in-store customers while white pharmacists were permitted to do so. But, defendant argues that this allegation is insufficient to make plaintiff's hostile work environment claim plausible

because plaintiff alleges she observed this on January 23, 2013, the day after she resigned. Thus, defendant insists that plaintiff has not alleged that any of the conduct to which she was subjected was because of her race, color, or national origin.

Plaintiff 's complaint contains sufficient factual allegations to suggest that she was subjected to discriminatory conduct. She has alleged that each of the actions taken by Cerni were "because of [her] race, color and national origin" and that Cerni "treated her with hostility not shown to non-black, non-African employees."[42] For purposes of the instant motion, this causal connection must be taken as true. In addition, acts contributing to a hostile work environment do not need to be specifically racial in nature because

> [f]acially neutral incidents may be included ... among the "totality of the circumstances" that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on [color, race, or national origin]. But this requires some circumstantial or other basis for inferring that incidents []neutral on their face were in fact discriminatory.

Alfano v. Costello, 294 F.3d 365, 378 (2d Cir. 2002). Contrary to plaintiff's contention, it is not sufficient that plaintiff has alleged that she is the only black pharmacist in the CVS district in which she worked. See Hawkins v. AT & T, Case No. 3:12–CV–1173–L, 2013 WL 4505154, at *5 (N.D. Tex. 2013 Aug. 23, 2013) (the plaintiff's allegations "that she was the only African American woman in her group" and that "she was the only one in the group

---

[42]Original Complaint at 3, ¶¶ 13 & 15, Docket No. 1.

that had a problem at work ... fall far short of stating a race or sex discrimination claim for which relief can be granted"). But, plaintiff has alleged other facts that suggest disparate treatment because of color, race or national origin, including that she was never allowed to close the drive-up window even though white pharmacists were allowed to and that she was not paid a year-end bonus when other non-black Store employees were paid a bonus.[43] Plaintiff has also alleged that she was subjected to questionable discipline and counseling, was singled out for a review by Cerni, and was singled out when defendant was applying company policies (the drug-seeking customer incident). Plaintiff has alleged sufficient facts from which an inference could be made, at least at the motion to dismiss stage, that Cerni's treatment of plaintiff was because of her race, color, or national origin.

But even if the comments and conduct that plaintiff has alleged could be construed to have been because of plaintiff's race, color, or national origin, defendant argues that plaintiff has still failed to state a plausible hostile work environment claim because the conduct alleged was not severe or pervasive enough to alter the conditions and terms of plaintiff's employment. "Whether a working environment is objectively 'abusive' 'can be determined only by looking at all the circumstances,' which 'may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's

---

[43]Original Complaint at 6, ¶¶ 38-39, Docket No. 1.

work performance.... [N]o single factor is required.'" E.E.O.C. v. Prospect Airport Services, Inc., 621 F.3d 991, 999 (9th Cir. 2010) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993)). In Amobi, 2011 WL 308466, at *4, for instance, the plaintiff alleged that her supervisor had "disparaged [her] work, reprimanded her without cause, and falsely accused her of cancelling a class and of publishing irregularities." The court found that these three alleged incidents of discriminatory conduct "were not sufficiently severe or pervasive to sustain a hostile work environment claim...." Id. In Guevara v. Marriott Hotel Services, Inc., Case No. C 10–5347 SBA, 2013 WL 1164961, at *1 (N. D. Cal. March 20, 2013), the plaintiff's complaint "identifie[d] a number of incidents that occurred during [p]laintiff's employment with Marriott from late 2003/early 2004 to September 2008 which [p]laintiff claim[ed] contributed to a racially hostile work." The "[p]laintiff also allege[d] that he was subjected to verbal conduct based on race at the arbitration hearings following his termination when 'Marriott management' provided false and misleading testimony regarding the events surrounding his termination." Id. at *7. The court found that the plaintiff's "allegations ... do not demonstrate that the conduct [p]laintiff was allegedly subjected to was sufficiently severe or pervasive to establish an actionable hostile work environment claim" because "[t]he incidents [p]laintiff relies upon to state a hostile work environment claim are isolated, sporadic events that took place over several years. They are not the type of frequent,

unwelcome verbal or physical acts that have been found to alter the conditions of employment and create an abusive work environment." Id. at *8.

Similarly here, defendant argues that plaintiff's allegations are insufficient to state a plausible hostile work environment claim as they do not suggest that she was subjected to conduct that was severe and pervasive. At best, defendant contends that plaintiff has alleged one incident that occurred because of race, color, or national origin (the closing of the drive through) and that one incident cannot be considered pervasive.

Plaintiff has alleged more than one incident of discriminatory conduct. She has alleged that Cerni engaged in numerous incidents of discriminatory conduct, including soliciting negative comments from other employees in order to levy discipline on her, disregarding company policy in order to levy discipline on her, and withholding her year-end bonus. And, the fact that she has alleged that she felt compelled to call the police on one occasion is sufficient to suggest that the alleged discriminatory conduct was severe. In sum, plaintiff has stated a plausible hostile work environment claim.

Defendant next argues that plaintiff's § 1981 claim should be dismissed because it is not plausible. "'Section 1981 of the Civil Rights Act of 1866 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens."'" Morrow v. City of Oakland, Case No. C 11–02351 LB, 2012 WL 2133755, at *9 (N.D. Cal. June 12, 2012)

(quoting Johnson v. Lucent Technologies Inc., 653 F.3d 1000, 1005–08 (9th Cir. 2011) (quoting 42 U.S.C. § 1981(a)). "A Section 1981 claim is sufficient to withstand a motion to dismiss if it alleges that the plaintiff suffered discrimination in employment on the basis of race." Id.

Defendant argues that all plaintiff has done is assert conclusory allegations that she was discriminated against "based on her race in the performance, modification, and termination of her employment contract, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."[44] But, defendant argues that plaintiff has failed to allege any factual support for these allegations. While plaintiff alleges that defendant "imposed higher requirements and more stringent standards on [her] than those imposed on similarly-situated white individuals",[45] defendant argues that plaintiff does not allege who imposed these requirements and standards nor what these requirements and standards were. Defendant compares plaintiff's allegations to those in Flores v. City of Phoenix, Case No. CV–11–492–PHX–GMS, 2012 WL 293371 (D. Ariz. Feb. 1, 2012); and Matthews v. NPMG Acquisition Sub, LLC, Case No. CV 09–2326–PHX–MHM, 2010 WL 3023300 (D. Ariz. July 30, 2010). In Flores, 2012 WL 293371, at *3, the plaintiff alleged that the "Defendant intentionally discriminated against [him] on the account of his race ... by denying him the equal terms, privileges, and conditions of his employment." The court held

---

[44] Complaint at 9, ¶ 65, Docket No. 1.

[45] Id. at ¶ 66.

that "[s]uch broad and conclusory allegations do not, however, put Defendant on notice that the termination itself is alleged to have been motivated by racial animus or raise Plaintiff's right to relief above the speculative level. Plaintiff has failed, therefore, to state a claim for racial discrimination." Id. (citations omitted). In Matthews, 2010 WL 3023300, at *6, the plaintiffs alleged that

> (2) Defendant subjected plaintiffs, as employees, to unwelcome racial harassment, including racial comments and slurs by Defendant's managers and/or employees, which fractured plaintiffs' contractual relationship because of race; and (3) That discriminatory conduct and racial discrimination by defendant diminished and destroyed the contractual relationship between plaintiffs and defendant, and caused plaintiffs to be discriminated against because of their race.

The court held that these allegations were insufficient because they were nothing more than "a threadbare recital [of] § 1981's elements...." Id. Similarly here, defendant argues that plaintiff's complaint is devoid of any specific factual content supporting her allegation that she was intentionally discriminated against because of her race.

Plaintiff has adequately alleged a § 1981 claim. Her complaint sets out specific requirements imposed on her, such as the company policy for drug-seeking customers, the company discipline policies, and the policy regarding the drive-through window. And she alleges that Cerni and Richmond applied these policies to her differently than they were applied to non-black employees. Plaintiff has alleged sufficient facts to suggest that she was intentionally discriminated against because of her race.

-18-

Finally, defendant argues that plaintiff's fourth cause of action should be dismissed. In her fourth cause of action, plaintiff seeks equitable relief pursuant to 42 U.S.C. § 2000e-5(g). "Section 2000e–5(g) allows the court to award 'equitable relief as [it] deems appropriate,' for Title VII violations." McCue v. State of Kan., Dep't of Human Resources, 165 F.3d 784, 791 (10th Cir. 1999). But, it does not create an independent cause of action. See Baldwin v. Duke Energy Corp., Case No. 3:12CV212–MOC–DSC, 2012 WL 3564021, at *4 (W.D.N.C. July 13, 2012) ("well-established that claims for ... equitable relief are not separate causes of action"). Plaintiff's fourth cause of action is dismissed.

## Conclusion

Defendant's motion to dismiss[46] is granted in part and denied in part. Plaintiff's constructive discharge, retaliation, and "equitable relief" claims are dismissed. Defendant's motion is otherwise denied. Plaintiff is given leave to amend as to her claims for constructive discharge and retaliation. If plaintiff is seeking equitable relief, she should do so in the prayer of her amended complaint. Plaintiff's amended complaint, should she choose to file one, shall be filed on or before March 4, 2014.

DATED at Anchorage, Alaska, this 11th day of February, 2014.

/s/ H. Russel Holland
United States District Judge

---

[46] Docket No. 8.